Good morning, Gary Burcham for Appellant Armando Garcia Rico. I would like to start with the Rule 11 issues that were presented in Mr. Garcia Rico's opening brief. We argued and the government conceded that the District Court committed plain error by failing to address the applicability of the U.S. Sentencing Guidelines at the time it accepted Mr. Garcia Rico's plea. The government takes the position, however, that there was no effect upon substantial rights by this plain error because there was no, what the government coined, causal link between the error of the District Court and the plea entered by Mr. Garcia Rico. What about that argument? I think the record speaks directly in contrast to the government's position. What we essentially have in the plea entered by Mr. Garcia Rico I think is a failure to have a meeting of minds between Mr. Garcia Rico, his attorney, and the District Court. The primary issue that was addressed by Mr. Garcia Rico in his declarations filed in support of his motion to withdraw the guilty plea was the discrepancy or the erroneous nature of the advice given to him by his attorney concerning the sentence he was looking at if he entered a plea of guilty. Mr. Garcia Rico in his declarations said a few different things concerning the plea of his attorney, but certainly in all instances it was 10 years or less, whereas under the guidelines that were in place at the time he pled guilty, it was a level 38 case, and the sentence imposed, of course, was 210 months. And so we have almost a decade in difference between the understanding Mr. Garcia Rico had at the time he pled guilty  Well what about the plea itself? There's a determination that it was knowing and voluntary. Didn't the judge indicate what the maximum and minimum sentences were? The court did review with Mr. Garcia Rico the maximum and the minimum as well as the minimum mandatory. Okay, and you don't object to those numbers? Those numbers were accurate? Correct, but I think looking at this simply in terms of maximum penalties is a bit misguided. Rarely do defendants receive the maximums in these cases. Yeah, but isn't that the law in terms of determining whether the guilty plea was voluntary or not? I don't think so. I think when a person pleads guilty they have a right to understand or be at least in some reasonable range of understanding concerning what they're looking at if they plead guilty. And for a plea to be knowing and voluntary, a person simply should not be advised of the maximum life, 20 years, 5 years, whatever that may be. They should have an understanding of what the practical consequences of their guilty plea is likely to be. Is there a case that holds that? Well, I would point the court to a case such as Toothman where the court reviewed an error or an erroneous prediction of sentence by defense counsel and found that there was error. The court found that a defendant has a right to competent advice concerning the likely consequences. Well, you know, Toothman, there was a pretty deep, they went through quite a detailed explanation of how the guidelines might apply in that particular case, and they were wrong. Right, that's Judge Jones in the Southern District, and he does... He's very elaborate, and that's a judge under Rule 11, a judge only needs to advise the case to apply. Correct, but I... For purposes of whether it's voluntary and knowing, for due process concerns, you just need to make sure they understand the consequences of their plea, which is a maximum possible sentence that they could get. Sure, but we presented this in the form of a Rule 11 violation, and... Rule 11 is a little bit different than whether it's voluntary and knowing. Correct, and the point that I tried to raise in my briefs was that had the court addressed the sentencing guideline issue with Mr. Garcia Rico during the plea, it's highly likely that this issue concerning his misunderstanding about the sentence he was looking at might have come to light. If you read the guilty plea codicle, clearly Mr. Garcia Rico was not a defendant who was standing there and simply answering yes or no. He had several objections with the district court concerning the factual basis for the plea. He had many disagreements with allegations that were made concerning his conduct, and I think if the district court would have raised the guideline issue as it is required to do under Rule 11, it's likely that Mr. Garcia Rico might have answered the question concerning have the guidelines been explained to you in the negative, which might have highlighted the situation concerning the erroneous nature of the prediction and his misunderstanding concerning the prediction. Looking to the ruling itself by the district court, our first argument concerns the fact that the district court failed to make sufficient findings for this court to make a reasoned review of the district court's ruling. The government claims in its brief that the district court credited the declaration of Mr. Garcia Rico's previous attorney, Mr. Navarro. However, all the district court did in its statement of its decision is simply review what had been submitted to the district court, and then really without making any sorts of its opinion or its decision, denied the motion. The government also says, well, there's no requirement that a district court make findings with respect to a motion to withdraw a guilty plea. I pointed out to the court that the motion to withdraw a plea is sandwiched between a 12D pretrial motion and a 32C1 sentencing objection, both of which explicitly require a district court to make findings. And we would submit that there's simply no reason for this court not to make the same requirement upon a district court when it's examining a fact-driven motion concerning a motion to withdraw a guilty plea. In this case, what we have with respect to findings for this court to review is essentially the district court reviewing all the- What do you make of the district court's statement that his prior counsel was not ineffective, or that he performed up to Strickland standards, or whatever the comment was? That was raised at the very end of the hearing. What does that mean? How does that fit into here? I don't think it fits in at all. That was raised at the very end of the hearing after the court had already ruled. At the prompt of the government, the government said, oh, Your Honor, by the way, do you find that counsel performed within Strickland standards, and the district court said, oh, yes, I do find that. It really doesn't fit in at all within the actual ruling of the district court concerning the merits of the motion. Really, it was almost an afterthought. It's something that would never have come up had the government not raised the issue with the district courts. I don't think it really fits in at all with the actual ruling that was made by the district court. You know, the whole purpose of findings is really to help with appellate review. And you look at the judge's ruling here, and they're a little short on findings, but if you look at the entire record, why can't we just look at the entire record before the district court and assume that he, you know, he resolved the credibility issues in a way that supports his decision? I think this court can only scour the record for evidence if the ability of the court is triggered by some findings by the district court. And in this case, I would submit that we really had no findings whatsoever, simply a review of the evidence in the case, review of what had been submitted primarily by the government, and then a denial of the motion. So he denied the motion, so can you infer from that that the district court credited, you know, the former counsel? Well, I guess you could infer that, but you could also infer that the district court had an improper understanding concerning the law as to what showing needed to be made for the motion to be granted. You can infer several things concerning what the basis for the ruling might have been. And that's the whole problem with the district court's ruling, is that we don't know what the district court's basis for denying the motion was. We don't know if it found the government's witness to be credible. We don't know if it found Mr. Garcia-Rico's declarations to be incredible. We have to guess at this point. That's the whole problem with the district court's ruling. Would it have made any difference if Davis had been handed down before this withdrawal sequence occurred? I don't think so. Davis is plain, is in effect at this point, and errors plain at the time of appellate consideration, which I believe is sufficient for this court to include Davis in the analysis. How about for the district court? I think that's what... I don't think so. I think that... If the district court had had Davis in front of it at the time. I don't think so. I think the law was clearly settled many years ago concerning this, that it was an issue raised by Mr. Garcia-Rico. It needed to be addressed, and financing needed to be made, credibility determinations, a basis for the ruling needed to be made. And I don't know that Davis necessarily added a whole lot to that that didn't exist previously. May I reserve my final 40 seconds? You certainly may. Thank you. You certainly may do so. We'll hear from the government. Good morning. May it please the Court. Becky Walker for the United States. The defendant raises several challenges to his convictions, and I'd like to address the motion to withdraw the guilty plea first. The district court acted well within its discretion in denying the defendant's motion. The district court had before had a defendant who, after having about six months post-indictment and several meetings with counsel, did knowingly and voluntarily enter a guilty plea, and it was only after the PSR came out several months later, showing a sentence higher than he had expected, that he began to talk about withdrawing a guilty plea, and only a considerable period of time after that that he, in fact, did move to withdraw his guilty plea after his attempts at cooperation with the government came out. What's our standard of review when we have this issue presented to us? Well, the standard of review is abuse of discretion. The Court has discretion to deny the motion to withdraw. And unless the Court abused that discretion, this Court must affirm. So it's very differential. It is. And the Court had good reasons in this case for denying the motion. The defendant needed to establish a fair and just reason. In this case, the focus, the primary focus was the purported misunderstanding about what his likely sentence would be. But the reason for that disparity between what Mr. Navarro advised the defendant, that is 135 months, and what his sentence actually ended up being, which was 210 months, was that the defendant failed to inform Mr. Navarro of two prior misdemeanor convictions, which made him, one, ineligible for the safety valve, and, two, increased his criminal history category from one to three. And as a result of those changes, his sentence went from, instead of being 135 months, to 210 months under the guidelines. But for that failure to inform his counsel. Let me ask you this. Do you need ineffective assistance of counsel or involuntary waiver to be a basis for just and fair reason to withdraw? No. Under the Davis case, it's now clear that the defendant does not have to establish ineffective assistance of counsel. Do you think the judge was concerned with that when he made that statement that counsel was not ineffective? It does not appear. Did he tie the two together? It does not appear the court did tie the two together. In fact, as counsel has pointed out, it was not until the government specifically asked for a finding about ineffective assistance that the court even made, you know, a specific finding regarding ineffective assistance. That was not the focus of the court's findings, although the court did mention both standards. It never stated that the defendant had to meet the prejudice prong or the ineffective assistance, the reasonable assistance prong of the Strickland standard in order to establish a fair and just reason, as did happen in Davis. And I think it is also significant that in this case the court did not find that counsel's performance was defective. In fact, the court, you know, discussed the declaration establishing the discussion of the guidelines and his conclusion as to 135 months and did conclude that was not ineffective. It was not a gross mischaracterization in this case, and that's in contrast to the Davis case where the district court, in fact, did find a gross mischaracterization, did find unreasonable performance on the part of counsel, but simply found that the defendant had not established prejudice, established causation to the level required in the Strickland, and on that basis this court remanded. The district court really didn't make any findings here. Well. Only except with respect to the ineffectiveness. Isn't that correct? Well, I don't think that's quite correct. What findings do you point to that support what you just said? The court, first of all, did make a factual recitation of what had occurred in the case, and in that factual recitation cited to Mr. Navarro's declaration.  He never cites any contrary facts asserted by the defendant in his recitation, so I think we can infer that the district court credited Mr. Navarro's declaration, and in that he explained that he had been advised of the guidelines, that he had explained the sentence to be, could possibly be as low as 135 months. That was specifically quoted by the district court. The district court also did point out, did point to the Rule 11 colloquy, which, of course, the judge had presided over, and the statements that the defendant had made at that colloquy to indicate that his plea had, in fact, been non-involuntary, that he had understood the nature of the charges, because that was a claim that the defendant made in his motion, but he really didn't understand the plea, that what was happening, the consequences of his plea, the district court found that, in fact, based on his Rule 11 colloquy, he did understand those things. He had been advised by Mr. Navarro about the guidelines. He was advised of the maximum and minimum sentences at the Rule 11 colloquy, and he understood those things, and he also did specifically state, contrary to his later declaration in his motion, that he had not been forced to plead guilty or not pressured to. Mr. Burcham makes the argument that the court should have told him about what the practical guidelines potential was, not just the maximum and the minimum, but a more realistic notion of what his exposure was. What's your response? The counsel should have advised him of that? Or the court? The court. As to the Rule 11 issue, the failure to advise. It's true that the court did not mention the guidelines, and should have mentioned that the court would impose, would consider the guidelines. The only Rule 11 requirement is that the court advise the defendant that the court at sentencing would consider, would be required to consider the sentencing guidelines and could depart for them under certain circumstances. That's all that was required under Rule 11. That was missing here, but certainly the record does not support any conclusion that that, but for that lack of advisement, the defendant would have pled guilty. In fact, the record is to the contrary, because as Mr. Navarro stated in his declaration, Mr. Navarro advised the defendant of the application of the guidelines. So clearly the defendant was aware that the guidelines would be used in calculating his sentence. So in this record, the defendant clearly has not established the causal link to show that his substantial rights were affected. We are in a plain error review, just as in the Dominguez-Bienito case. And just there, here, just as in that case, the defendant cannot establish that there was a reasonable probability that he would not pled guilty without the required Rule 11 advisement. Is Mr. Rico entitled to an amylene remand? Yes, Your Honor. The government would agree to a limited remand pursuant to amylene, and that I think would address the Blakely and Booker arguments raised. If the Court has no further questions. No further questions, counsel. Thank you. Mr. Bertram, you have at least 40 seconds. Thank you very much. The government says that Mr. Garcia Rico created his own problem by not advising his counsel of his prior misdemeanor convictions. In my experience with several hundred federal criminal cases, rarely does a criminal defendant actually know what his criminal history is. And it's the job of the defense attorney, not the client, to figure out what the criminal history category is going to be prior to pleading his client to a Level 38 methamphetamine offense. So to put this on Mr. Garcia Rico is a bit unfair. Counsel dropped the ball in this case in several respects. You're not arguing IAC, are you? Not at this point, Your Honor. No, I'm not. Judge Pyatt, with respect to your Davis question, a better answer to your question is that the standard has been fair and just for many years. And the standard was fair and just when it was before the district court in this case. And the district court, looking at the facts of this case, had to make a determination whether there was a fair and just reason. And the Davis case helped explain exactly what was and what was not fair and just. But the standard was there at the time the district court ruled on this motion. And the district court erred in failing to make that finding. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Paez